IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STILLWATER LAKES CIVIC : 
ASSOCIATION, INC., : CIVIL ACTION NO. **3:CV-08-2264**
 : 
 : (Judge Mariani)
Plaintiff : (Magistrate Judge Blewitt)
 : 
v. : 
 : 
NOREEN GORKA, et al., : 
 : 
Defendants : 

## REPORT AND RECOMMENDATION

**I. Background.**

Plaintiff, Stillwater Lakes Association, Inc., ("the Association"), a Pennsylvania non-profit corporation that manages a planned community known as Stillwater Lake Estates, Coolbaugh Township, Monroe County, Pennsylvania, filed this action on December 18, 2008, in this Court against Defendants Noreen Gorka, Michael Glassic, Stillwater Lakes Citizens, and Stillwater Lakes Community Activist, a Pennsylvania corporation ("Defendants").  Plaintiff attached exhibits to its Complaint. (Doc. 1).

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, §1338 and 15 U.S.C. § 1116.  Count I of Plaintiff's Complaint was a trade infringement claim under § 1125(a) of the Lanham Act.  Plaintiff's second claim under the Lanham Act was its Cybersquatting claim (Count II).  Plaintiff sought the Court to exercise its supplemental jurisdiction over its Pennsylvania anti-dilution law claim (Count III), its common law unfair competition claim (Count V)[1] and its

---

[1]Plaintiff stated that its Count V unfair competition claim was brought under common law as opposed to  under the Lanham Act § 43(a).  (Doc. 1, p. 31, ¶ 141.).

common law trade name  infringement claim (Count VI) under 28 U.S.C. §1367(a). (Doc. 1, p. 3).

 Plaintiff's Complaint contained six (6) counts, to wit:

> Count I:       Lanham Act - Trade Name Infringement
>
> Count II:      Cybersquatting (Lanham Act)
>
> Count III:     Pennsylvania Statutory Anti-Dilution of Trade Name
>
> Count IV:      Anti-Dilution Misappropriation of Corporate Name
>
> Count V:       Unfair Competition
>
> Count VI:       Common Law Trade Name Infringement

(Doc. 1, pp. 12-35, ¶'s 63.-157.).

Plaintiff sought injunctive relief as well as damages and enforcement costs under 15 U.S.C. § 1117(d).

On January  20, 2009, in response to the original Complaint, all Defendants jointly  filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. 8).  Defendants filed their support Brief on January 31, 2009. (Doc. 10).  Plaintiff filed its opposition Brief with attached case law on February 17, 2009.  (Doc. 14).  Defendants filed their Reply Brief with attached exhibits on February 28, 2009.  (Doc. 15).

On April 2, 2009, we issued a Report and Recommendation and recommended that Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 8) be denied with respect to all of

---

An unfair competition claim  under common law is the same as one under the Lanham Act  except under Pennsylvania  law there is no requirement that the goods travel through interstate commerce.  211 F. Supp. 2d at 582, ¶17.

Plaintiff's claims, *i.e.* Counts I-VI.[2]   (Doc. 16).   On April 30, 2009, the Court adopted our R&R. (Doc. 17).

Defendants filed their Answer to Plaintiff's original Complaint on June 2, 2009.  (Doc. 19). We issued a scheduling order on July 9, 2009, and set a discovery deadline of January 1, 2010, and a dispositive motion deadline of May 1, 2010. (Doc. 26).[3]

On January 28, 2010, Plaintiff filed an Amended Complaint with attached exhibits.  (Doc. 48).  Defendants filed their Answer to Plaintiff's Amended Complaint on March 1, 2010.  (Doc. 52)[4] We issued an Order and extended the time for discovery on August 19, 2010, and set the new deadlines as follows: discovery deadline of March 1, 2011, and dispositive motion deadline of April 1, 2011.  (Doc. 56).  Discovery then ensued.

On May 9, 2011, Plaintiff filed a Motion to Voluntarily Dismiss case with Prejudice pursuant to Fed.R.Civ.P. 41(a)(2).  **(Doc. 69).**  Plaintiff's Motion was briefed by the parties.  (Docs. 70, 71 and 82).

On May 23, 2011, Defendants Gorka and Glassic filed a Motion for Sanctions under Rule 11.  **(Doc. 72).**

---

[2]The undersigned has been assigned this case for pre-trial matters.

[3]Following Defendants' Answer to Plaintiff's original Complaint, this case went to mediation.

[4]Plaintiff's Amended Complaint raised the same above stated six counts contained in its original Complaint and added a seventh count of Anti-Dilution of Trade Name under Section 1125(c) of the Lanham Act.

On May 26, 2011, Defendants Gorka and Glassic filed a Motion for Attorney Fees and Costs under the Lanham Act. **(Doc. 74).**[5]

Defendants' two Motions (Docs. 72 and 74) were briefed by the parties.  (Docs. 73, 75, 78, 85, 87, 92, 93 and 94).  The parties also filed voluminous exhibits regarding all three pending motions.  (Docs. 82, 85 and 87).

On September 27, 2011, we held oral argument, on the record, with respect to the three pending motions, Docs. 69, 72 and 74.  (Doc. 95).  Counsel for Defendants requested that the oral argument be converted to a hearing with testimony and evidence.  We denied Defendants counsel's request *via* telephone conference on the morning of September 27, 2011, prior to oral argument.  During the oral argument, Defendants counsel again requested an evidentiary hearing on the three pending motions.  We directed counsel for both parties to submit briefs on the issue. Defendants filed their brief on October 7, 2011, and Plaintiff filed its opposition brief on October 11, 2011.  (Docs. 99 and 100).

We agree entirely with the reasons outlined in Plaintiff's Doc. 100 opposition brief as to why the Court, in its discretion, should deny Defendants' untimely oral request for an evidentiary hearing.  As both parties agree, it is within the Court's discretion on whether an evidentiary hearing is necessary in a case such as the present one.  *See Schiro v. Landrigan*, 550 U.S. 465, 467-468 (2007); *Gist v. Diguglielmo*, 2009 WL 2616716, *21 (E.D. Pa. 8-25-09).  In exercising its discretion, a court must consider whether such an evidentiary hearing would allow a movant to prove the factual allegations in the motion.  In this case, we have afforded Plaintiff and Defendants with more

---

[5]We refer to Defendants Gorka and Glassic jointly herein as Defendants.

than ample opportunity to fully develop the record regarding their pending motions, and we find that both parties have submitted an abundance of evidence which is beyond sufficient for the Court to rule on the motions.  We have also held an oral argument.  Further, as discussed below, we do not find that there are complex issues with respect to the three pending motions, and we do not find that the Court's decision making would be enhanced by an evidentiary hearing in this case.

We again find that, in light of the voluminous exhibits submitted by the parties, and in light of the extensive briefs filed, there is no need for an evidentiary hearing on the three outstanding motions.  We also agree with Plaintiff that Defendants' request for an evidentiary hearing was untimely since the last motion became ripe on July 20, 2011, over two months before Defendants' request.  In any event, based on our discussion below, we find no need for an evidentiary hearing.

Thus, we will recommend that the Court, in its discretion, deny Defendants' oral request for an evidentiary hearing since we find that the present record is more than sufficient for the Court to decide the three pending motions.

We now consider the three pending motions *seriatim*.  (Docs. 69, 72 and 74).[6]

## II.  Factual Background.

Plaintiff averred as follows in its original Complaint:

1.      This is an action commenced by the Board of Directors of Stillwater Lakes Civic Association (hereinafter "the Association"), a Pennsylvania nonprofit corporation that manages the planned community

---

[6] We were assigned this case for pre-trial matters.  We issue a Report and Recommendation with respect to the three pending motions since Plaintiff 's Motion to Voluntarily Dismiss case with Prejudice is a dispositive motion and since Defendants' two motions are intertwined with Plaintiff's motion.

known as Stillwater Lake Estates, Coolbaugh Township, Monroe County, Pennsylvania.

      2.     As a corporation, the Association has ownership rights to its corporate and trade name ("Stillwater Lakes" and "Stillwater Lakes Civic Association, Inc.") pursuant to Articles of Incorporation filed with the Pennsylvania Department of State in 1976.

      3.     Defendants registered domain names strikingly similar to the Association's and have operated a website using the Association's official corporate and trade name without Association authorization.

      4.     Plaintiff brings causes of action under the relevant Federal and State trademark statutes and common law causes of action, alleging trade name infringement, dilution, cyber squatting and misappropriation.

(Doc. 1, pp. 2-3, ¶'s 1.-4.).[7]

Plaintiff is the community association which owns and operates the common areas of Stillwater Lake Estates. Plaintiff averred that "as a corporation ... it has ownership rights to its corporate and trade name pursuant to Articles of Incorporation filed with the Pennsylvania Gorka and Glassic, jointly own property in Stillwater Lake Estates. Defendant Gorka was a member of Plaintiff's Board of Directors. Defendant Stillwater Lakes Citizens was allegedly a fictional entity which was owned and operated by Defendants Gorka and Glassic out of their house and was not registered with the State. Plaintiff alleged that Stillwater Lakes Citizens was the alter ego of Defendants Gorka and Glassic. Defendant Stillwater Lakes Community Activist is a non-profit

---

[7]The factual background contained in Plaintiff's original Complaint is basically the same as that contained in Plaintiff's Amended Complaint. As noted above, the main distinction between Plaintiff's pleadings is that Plaintiff's Amended Complaint added a seventh count under the Lanham Act.

corporation organized under Pennsylvania laws and was headed by Defendant Glassic.  Plaintiff alleged that  Defendants Gorka and Glassic were entirely in control of Defendants Stillwater Lakes Community Activist and Stillwater Lakes Citizens.

Plaintiff averred that in August 2006 and June 2008, Defendants Gorka and Glassic registered the website domain names of www.stillwaterlakes.net and www.stillwaterlakes.com. Both websites lead to the former website.  (*Id.*, p. 6).  Plaintiff stated that Defendants Gorka and Glassic owned and operated the websites.  Plaintiff began its own official website in March 2008 with the domain name of www.mystillwaterlakes.com.   (*Id.*, p. 9).

Plaintiff alleged that Defendants Gorka and Glassic offered to sell the two stated domain names to it for profit, and that it refused to buy the domain names since it already had exclusive right to the names.  Plaintiff further alleged that "the Defendants, through a membership forum included in their website, have posted and monitored inaccurate and critical entries regarding [Plaintiff], its Board of Directors, Management Company and individual Directors."  (*Id.*, p. 7). Plaintiff averred that the website of Defendants did not conspicuously state that it was not the official  site of Plaintiff, and that there was  no clear disclaimer language on the website disassociating it from Plaintiff.  Plaintiff also averred  that Defendants' website displayed its trade and corporate  name without its authorization.  (*Id.*, pp. 8-9).  Plaintiff stated that it  tired to force Defendants Gorka and Glassic to cease and desist operation of their "misleading" website, but to no avail.  (*Id.*, pp. 9-10).  Plaintiff stated that despite its letters and minor changes made by Defendants to their website, "the [website] still fail[ed]  to contain adequate information to avoid confusing[users] as to the official nature of the site and continue[d] to use [Plaintiff's] trade and

corporate name without authorization." (*Id.*, p. 10). Plaintiff further avers that the term "Stillwater

Lakes" used in Defendants' domain name and website "is causing confusion amongst users within

and outside of the community." (*Id.*). Plaintiff stated that Defendants continued to make

references to it and its home page in their website and to use the acronym "SLCA" in an attempt

to confuse internet users. Plaintiff concluded its allegations as follows:

> 54. Defendants, in bad faith, have intended to profit from the good will
> and reputation of the Plaintiff, as said site contains private advertising by third
> parties.

> 55. Defendants registered the domain names which are confusingly
> similar to the Association's corporate and trade name.

> 56. It was the Defendants' intent to harm the Plaintiff's reputation and
> good will by increasing the likelihood of confusion as to the source, sponsorship,
> affiliation or endorsement of the Association's official site.

(*Id.*, pp. 11-12).

Thus, Plaintiff alleged that Defendants were using trade names and domain names similar

to Plaintiff's names without its authorization.

Plaintiff stated that based on Defendants' alleged conduct, namely, of attempting to market

Plaintiff's domain name for profit, it suffered and would continue to suffer damages, and that

Defendants should be enjoined from operating their website and ordered to transfer the registration

of their domain names to Plaintiff to prevent further damages and the intentional use of its trade

name without its consent.

### III. Discussion.

*1. Plaintiff's Motion for Voluntary Dismissal with Prejudice (Doc. 69)*

At oral argument, Defendants stated that they had no opposition to Plaintiff's Motion for Voluntary Dismissal with Prejudice (Doc. 69). Defendants stated that they only want the Court to retain jurisdiction over this case so that it can rule on their Motion for Sanctions and Motion for Attorney Fees (Docs. 72 and 74) before the Court dismisses this case.

In *Dodge-Regupol, Inc. v. RB Rubber Products, Inc.*, 585 F.Supp.2d 645, 652 (M.D. Pa. 2008), the Court stated:

> Rule 41(a)(2) provides that "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." A motion for voluntary dismissal under Rule 41(a)(2) lies within the sound discretion of the district court. *Citizens Sav. Ass'n v. Franciscus,* 120 F.R.D. 22, 24 (M.D.Pa.1988) (citing *Ferguson v. Eakle,* 492 F.2d 26, 28 (3d Cir.1974)). "The purpose of the grant of discretion under Rule 41(a)(2) ... is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." Charles A. Wright & Arthur R. Miller ("Wright & Miller"), 9 Fed. Prac. & Proc. Civ.2d § 2364 n. 19 (collecting some of the "many, many cases" so holding).

We find that the Court can grant Plaintiff's Motion for Voluntary Dismissal with Prejudice (Doc. 69) and still rule on Defendants' two pending motions for sanctions and attorney's fees if they are considered collateral motions.

As the Court stated in *Stauffer v. D.R. Horton, Inc. –-New Jersey   Horton, Inc.--New Jersey*, 2008 WL 5215951, *2 (E.D. Pa. December 10, 2008), the Court stated:

> Although a timely notice of voluntary dismissal under Rule 41(a) (1)(A) usually ends a case and deprives the court of jurisdiction to issue a merits ruling, the court may continue to decide "collateral" issues, including sanctions, costs, and attorneys' fees. *Id.* at 166, n. 8 (citing *Cooter & Gell v. Hartmarx*

*Corp.*, 496 U.S. 384, 396-98, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)).

However, if Defendants' motions are found to require the Court to rule on the merits of the case, then they will not be considered collateral motions, and granting Plaintiff's Motion for Voluntarily Dismissal will deprive the Court of jurisdiction to consider Defendants' motions. *See Stauffer*, 2008 WL 5215951, *3. Even if Defendants' two motions are not deemed collateral motions, we address Defendants' two pending motions in this R&R in addition to Plaintiff's Doc. 69 Motion. Therefore, if the Court simultaneously decides the three ripe motions in this case and it grants Plaintiff's Motion for Voluntary Dismissal with Prejudice (Doc. 69), as we recommend, it clearly will retain jurisdiction over this case to simultaneously decide Defendants' two motions. Thus, we find that Defendants' request for the Court to refrain from granting Plaintiff's Doc. 69 Motion until their motions are decided is not necessary in this case.

Therefore, we will recommend that the Court grant Plaintiff's Motion for Voluntary Dismissal with Prejudice. (Doc. 69).

   2. *Defendants' Motion for Sanctions under Fed.R.Civ.P. 11  (Doc. 72)*

Defendants Gorka and Glassic move the Court to impose sanctions against Plaintiff under Fed.R.Civ.P. 11 and claim that Plaintiff instituted this action in bad faith "simply for the purposes of harassing [them] without legitimate purpose or cause of action." (Doc. 72). Defendants seek, in part, the Court to award them attorney's fees for Stewart Rosenblum in the amount of $13,980.91 and attorney's fees for Anders & Masington, L.L.C., in the amount of $11,022.50. Defendants also seek the Court to award them sanctions.

Rule 11 (b) and (c) provides that:

> **(b) Representations to Court.**  By presenting to the court a
> pleading, written motion, or other paper, whether by signing, filing,
> submitting, or later advocating it, an attorney or unrepresented party
> certifies that to the best of the person's knowledge, information,
> and belief, formed after an inquiry reasonable under the circumstances:
>
> > **(1)** it is not being presented for any improper purpose, such as
> > to harass or to cause unnecessary delay or needlessly increase the
> > cost of litigation;
>
> > **(2)** the claims, defenses, and other legal contentions
> > are warranted by existing law or by a nonfrivolous argument for
> > the extending, modifying, or reversing existing law or for
> > establishing new law;
>
> > **(3)** the factual contentions have evidentiary support or,
> > if specifically so identified, will likely have evidentiary support after
> > a reasonable opportunity for further investigation or discovery; and
>
> > **(4)** the denials of factual contentions are warranted on
> > the evidence or, if specifically so identified, are reasonably
> > based on belief or a lack of information.
>
> **(c) Sanctions.**
>
> > (1) ***In General***. If, after notice and a reasonable opportunity to respond,
> > the court determines that Rule 11(b) has been violated, the court may impose
> > an appropriate sanction on any attorney, law firm, or party that violated
> > the rule or is responsible for the violation.

As both parties  recognize, when confronted with a request to impose Rule 11 sanctions, it

is within the Court's discretion in determining if a party did not sufficiently investigate the facts of

the case and if a party did not properly research the applicable law prior to filing suit.  *Zuk v. EPPI*

*of the Medical College of Pennsylvania*, 103 F. 3d 294, 299 (3d Cir. 1996).  Rule 11 (b) (3) provides

flexibility  which  allows  pleadings  based  on  evidence  reasonably  anticipated  after  further

investigation or discovery. *Rotella v. Wood*, 528 U.S. 549, 120 S.Ct. 1075, 1083 (2000).  The Court applies an objective standard when considering Rule 11 sanctions and must determine whether a reasonable attorney would have believed the pleading was well-founded according to what a reasonable attorney at that time would have known.  An attorney may be subject to sanctions for failure to conduct a reasonable inquiry if support does not objectively exist for the complaint.  *In re Keegan Management Co., Secs. Litigation*, 78 F. 3d 431, 434 (9th Cir. 1996).  Thus, the standard of objective reasonableness under the circumstances applies in determining if a party should be sanctioned.  *See LaFarge v. No. 1 Contracting Corp.*, 2008 WL 2120518 (M.D. Pa. 5-19-08).

The Defendants' Motion for Sanctions is based on the alleged failure of Plaintiff to make a reasonably adequate inquiry into the facts and the law prior to filing this action.  Specifically, Defendants contend that Plaintiff violated Rule 11(b)(1) based on the following:

A. That the action was instituted to cause the Defendants financial harm in that they would have to bear the cost of this litigation;

B. That the action was instituted to harass the Defendants in retaliation for a complaint filed with the Pennsylvania Bureau of Consumer Protection.

C. That the Complaint named Noreen Gorka as a Defendant, notwithstanding the fact that she was not an owner of the homepage/website and had no involvement with the maintenance an administration of the homepage/website at the time the litigation was instituted, a fact which was known to the representatives and agents of the Plaintiff.

D. The Defendant, Michael Glassic, was not in competition with the Plaintiff and in establishing the website, the Defendant, Michael Glassic, was simply exercising his First Amendment rights to freedom of speech concerning a quasi political activity, said action then being brought in violation of the said First Amendment rights of Michael Glassic.

E. Stillwater Lakes is a geographic location.

F.     That prior to the institution of this litigation, changes to the homepage/website had been made, which are now satisfactory to the Plaintiff and which were, therefore, satisfactory at the time of this ligation, the said litigation being instituted with full knowledge that the website pages had been changed for a period of time prior to the filing of the lawsuit.

G.     That the Plaintiff, in defending against the Rule 12(b) Motion to Dismiss filed by the Defendants, including, *inter alia*, your Movants, made misrepresentations to this Honorable Court.

8.     That the Plaintiff, at the time of the institution of this ligation, with the exception of Subparagraph G of the preceding paragraph, had full knowledge that such was the situation and conducted no reasonable investigation for purposes of determining whether or not a viable cause of action existed for any of the Counts alleged in the Complaint.

(Doc. 72, pp. 3-5).

Defendants contend that Plaintiff violated Rule 11(b)(2) based on the following:

A.     The Defendants were not engaged in the sale of goods or services in interstate commerce.

B.     The homepage/website posted by the Defendants was posted prior to any website page by the Plaintiff.

C.     The Plaintiff does not and did not engage in the sale of goods or services in commerce and, therefore, no likelihood of confusion could, as a matter of law, exist.

D.     The Defendants were not in competition with the Plaintiff in the sale of goods and services, since neither party was involved in such trade or commerce.

E.     The homepage/website complained of did not dilute the name of the Plaintiff and at the time of the filing of the lawsuit contained sufficient disclaimers that no one could reasonably interpret that such, in fact, was the case.

F.     The Plaintiff did not, as a result of any actions complained of the Defendants, suffer a loss of profits due to unfair competition.

G.     The Plaintiff had no common law right to trademark for its name, since it never used a trademark designation.

13

H.     The Defendants did not misappropriate the corporate name of the Plaintiff.

I.     The homepage/website which sought involvement from members of the Plaintiff Association was critical of actions and decision of the Board of Directors of the Plaintiff.

11.     That at the time this litigation was instituted, the Plaintiff, its employees, representatives and agents were aware of the facts in the preceding paragraph and filed this lawsuit anyway in bad faith.

(Doc. 72, pp. 5-6).

Defendants contend that Plaintiff violated Rule 11(b)(3) based on the following:

A.     Your Movant Noreen Gorka was named as a Defendant, when, in fact, she was not an owner and she had no involvement in the operation, administration or maintenance of the website.

B.     The name Stillwater Lakes is a geographic location and, therefore, is not actionable.

C.     The Plaintiff did not sell products or services in commerce.

D.     The Defendants did not sell goods or services in interstate commerce in competition with Plaintiff.

E.     Based upon the homepage/website, there was no likelihood of confusion.

F.     That there was no factual basis for a claim that the Defendants diluted the name of the Plaintiff.

G.     That the Plaintiff, from an evidentiary standpoint, could not establish that it had a common law trademark.

H.     That from an evidentiary standpoint, the Plaintiff cannot establish that at the time it filed the Complaint, the allegations contained therein concerning the content of the homepage/website.

(Doc. 72, p. 7).

14

The Court in *Stauffer*, 2008 WL 5215951, *2, stated:

> Rule 11 authorizes the Court through the imposition of sanctions "to check abuses in the signing of pleadings." Fed.R.Civ.P. 11 Advisory Committee Notes (1983 Amendments); *see also Martin v. Brown*, 63 F.3d 1282, 1264 (3d Cir.1995). "The purpose of Rule 11 is to deter litigation abuse that is the result of a particular 'pleading, written motion, or other paper' and, thus, streamline litigation." *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 97 (3d Cir.2008) (internal quotations omitted).
>
> Under Rule 11(b), in submitting a pleading, contention, or denial, the lawyer or *pro se* party certifies that the submission is not frivolous, baseless, and has not been made for an "improper purpose." Rule 11(c) allows a court to impose sanctions on an attorney or party for violating Rule 11(b), as long as the party seeking sanctions complies with the Rule's "safe harbor" provision:
>
> > [a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred  for the motion.
>
> Fed.R.Civ.P. 11(c)(2). Thus, before seeking sanctions under Rule 11, a party must give notice of the alleged offending conduct and allow the  opposing party 21 days in which to withdraw or otherwise correct the challenged submission. **Compliance with this "safe harbor" provision is mandatory.** *See In re Schaefer Salt Recovery, Inc.*, 542 F.3d at 99. "If the twenty-one day period is not provided, the motion must be denied." *Id.*

(Emphasis added).

Plaintiff also cites to the *Stauffer* case, and we agree with Plaintiff that based, in part, on *Stauffer*, Defendants' undisputed failure to comply with the "safe harbor" provision should not be excused.  (Doc. 85, p. 13).  We disagree with Defendants that our case is distinguishable from *Stauffer* simply because the Complaint in *Stauffer* was withdrawn in two months after it was filed.

(Doc. 93, p. 14).   While our case continued for about 2 ½ years before Plaintiff filed its voluntary Dismissal Motion and Defendants filed their Motion for Sanctions, Defendants could have filed their Motion earlier and provided Plaintiff with the safe harbor period.   Rather, Defendants waited until Plaintiff filed its Doc. 69 Motion for Voluntary Dismissal. Under these circumstances, we do not find that Defendants should be excused from the safe harbor requirement as they contend.

As stated, Plaintiff argues that Defendants did not file their Motion for Rule 11 Sanctions within the 21 days safe haven time.   Defendants state that they had to file their Rule 11 Motion when they did since it was filed after Plaintiff 's Motion for Voluntary Dismissal.   As stated, Plaintiff filed its Motion for Voluntary Dismissal on May 9, 2011, and Defendants filed their Rule 11 Motion on May 23, 2011.   (Docs. 69 and 72).   The Court in *Stauffer*, 2008 WL 5215951, *3, indicated that the 1993 Amendments to Rule 11 added the safe harbor provision, and stated:

> With these Amendments, sanctions are not available once a party has withdrawn the offending pleading either before or within 21 days after receiving a safe harbor notice. *See Evans v. Chichester School Dist.,* 2008 WL 4610240, No. 07-0072, at *5 (E.D.Pa., Oct. 15, 2008) (denying Rule 11 motion where it was filed after the plaintiff voluntarily withdrew all claims); *Hockley by Hockley v. Shan Enterprises Ltd. Partnership,* 19 F.Supp.2d 235 (D.N.J.1998) (Rule 11 sanctions do not apply where party has voluntarily dismissed offending claims); Fed.R.Civ.P. 11 Advisory Committee Notes (1993 Amendment) ("The rule .... generally provid[es] protection against sanctions if [a party] withdraw[s] or correct[s][a] contention[ ] after a potential violation is called to [its] attention.").
>
> Accordingly, under the 1993 Amendments, Plaintiffs insulated themselves from Rule 11 liability when they voluntarily dismissed their Complaint after receiving Defendant's dismissal motion. *See Photocircuits Corp. v. Marathon Agents, Inc.,* 162 F.R.D. 449, 452 (E.D.N.Y.1995) (sanctions not available where Plaintiff voluntarily withdrew complaint prior to filing of Rule 11 motion). In these circumstances, I deny Defendant's request for Rule 11 sanctions.

16

The Court in *Integrated Service Solutions, Inc. v. Rodman,* 2009 WL 1152162, *9 (E.D. Pa. 4-29-09), stated:

> Pursuant to this rule, the request that the court impose Rule 11 sanctions must be made in a separate motion from any other request or filing, which cannot be filed with the court until at least 21 days after service of the motion on the party against whom sanctions are sought.
>
> Rodman has not adhered to either of these precepts. His request for Rule 11 sanctions was contained within his "Response to the Plaintiff's Motion for Voluntary Dismissal Pursuant to Fed.R.Civ.P. 41(a)(2)." (Doc. 93 at 1.) His filing does not demonstrate that he first served upon ISS any Rule 11 motion, nor has he challenged ISS's contention that he has not done so. Accordingly, we will deny Rodman's request that we impose against ISS and its counsel sanctions pursuant to Rule 11. *See, e.g, Omega Sports, Inc. v. Sunkyong Am., Inc.,* 872 F.Supp. 201, 203 (E.D.Pa.1993) (concluding that an award of Rule 11 sanctions "would be unwarranted" where party failed to comply with separate motion rule and safe harbor provision).

We find that our case is similar to the *Integrated Service Solutions* case since our Defendants filed their brief in response to Plaintiff's Motion for Voluntary Dismissal on May 18, 2011, and Defendants filed their Rule 11 Motion on May 23, 2011, two weeks after Plaintiff filed its Motion for Voluntary Dismissal.  As Plaintiff states, "Defendants wholly failed to serve Plaintiff with a copy of their Motion for Sanctions prior to filing their objections to Plaintiff's Motion to Dismiss or their actual Motion for Sanctions."  (Doc. 85, p. 12).  Also, as Plaintiff points out, Defendants have not shown that they served Plaintiff with their motion for sanctions 21 days before filing it.

We agree with Plaintiff and find that since it moved to voluntarily dismiss its case 14 days before Defendants filed their Rule 11 Motion, and since we find that Defendants failed to comply with the mandatory "safe harbor" provision, we will recommend that Defendants' Motion for Rule 11 Sanctions be denied.  *See Waris v. Ormond*, 2009 WL 2385891, *5 (E.D. Pa. 7-29-09)(Court

denied motion for Rule 11 sanctions since moving party failed to comply with the sage harbor provisions of Rule 11); *Whitney v. Marut*, 2008 WL 542968, *3 (M.D. Pa. 2-25-08)(Court held that an award of sanctions was not appropriate since moving party did not comply with the procedural dictates of Rule and the 21-day safe harbor period).

Moreover, as stated, the Court previously found that Plaintiff stated cognizable claims under all six counts of its original Complaint and denied Defendants' Motion to Dismiss in its entirety.  We find that this shows, in large part, Plaintiff was in compliance with Rule 11 when it filed its pleadings in this case and, that Plaintiff did not file its action for an improper purpose and did not know at the time it filed its action its claims lacked legal or evidentiary support.

Therefore, we will recommend that Defendants' Motion for Rule 11 Sanctions be denied. (Doc. 72).

We now consider Defendants' Motion for Attorney Fees under the Lanham Act.

3.  *Defendants' Motion for Attorney Fees under the Lanham Act (Doc. 74)*

In *Acumed LLC v. Advanced Surgical Services, Inc.*, 561 F.3d 199, 230 (3d Cir. 2009), the Court stated:

> Appellant predicated its second claim for attorneys' fees under the Lanham Act, which authorizes an award of attorneys' fees to a prevailing party in "exceptional" cases. 15 U.S.C. § 1117(a). Exceptional cases involve culpable conduct on the part of the losing party, "such as bad faith, fraud, malice, or knowing infringement." *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 280 (3d Cir.2000) (citation omitted). "In cases in which the defendant is the prevailing party in a trademark infringement case and seeks fees from the plaintiff, the plaintiff's culpable conduct will necessarily center on the act of filing the lawsuit rather than on the infringement." *Id.*

18

In *Jama Corp. v. Gupta*, 2008 WL 108671, *1 (M.D. Pa. January 04, 2008), the Court elaborated as follows:

> Section 35(a) of the Lanham Act provides that [t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). However, Section 35(a) does not explicitly define the meaning of an "exceptional case[ ]."
>
> The Third Circuit Court of Appeals has recently determined that finding exceptional conduct requires a two-step inquiry. *Green v. Fornario,* 486 F.3d 100, 103 (3d Cir.2007). First, the district court must determine if there was any culpable conduct, such as "bad faith, malice or knowing infringement" on the part of the losing party. *Id.* (citing *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.,* 952 F.2d 44, 47 (3d Cir.1991); *SecuraComm Consulting, Inc. v. Securacom, Inc.,* 224 F.3d 273, 280 (3d Cir.2000)). Second, the court must determine if the circumstances are "exceptional" enough to warrant an award. *Id.* A court may not award fees without finding culpable conduct, but it may decline to award them despite such conduct based upon the totality of the circumstances. *Id.*
>
> A finding of culpable conduct for the awarding of attorney fees is reliant upon the specific facts of the case. *SecuraComm,* 224 F.3d at 280. In this case, the Plaintiff has demonstrated culpable conduct. The jury reached a verdict finding that the Defendants actions were "willful," which is conduct capable of supporting an award for attorneys' fees.  If culpable conduct exists, the court must then determine if the case is "exceptional." When determining if a case is exceptional, the court may consider factors such as "the closeness of the liability question and whether the plaintiff suffered damages." *Green,* 486 F.3d at 103–04 (citing *Ferrero,* 952 F.2d at 49). The Plaintiff has demonstrated that the case is exceptional for purposes of recovering attorneys' fees, as the jury awarded damages for the willful infringement by the Defendants. Therefore, the Court will award the Plaintiff attorneys' fees pursuant to the Lanham Act.

The *Jama Corp.* Court, 2008 WL 108671, *2, defined prevailing party and stated:

> The term "prevailing party" is a legal term of art, and requires a party to "succeed on 'any significant issue in the litigation which achieves some of the benefit the parties sought in bringing suit.' " *Wheeler by Wheeler v. Towanda Area Sch. Dist.,* 950 F.2d 128, 131 (3d Cir.1991) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40

(1983)). The *Wheeler* court then applied a two part test consistent with *Hensley:* (1) whether the plaintiffs achieved relief, and (2) whether there was a causal connection between the litigation and the relief from the defendant. *Id.*

Thus, the Court in its discretion can award "exceptional case" attorney fees under §35(a) of the Lanham Act, 15 U.S.C. §1117(a).  *See Urban Outfitters, Inc. v. BCBG Max Azria Group, Inc.*, 2011 WL 2160260, *1 (3d Cir. June 01, 2011).  The Court may award attorney fees to the prevailing party in exceptional cases  where the losing party committed culpable conduct, such as misconduct during the course of the litigation.  *Id*.

Initially, we agree with Defendants that since Plaintiff filed a Motion for Voluntary Dismissal of this case with prejudice and since we will recommend that the Court grant Plaintiff's Motion, Defendants are the prevailing party for purposes of their Doc. 74 Motion.  We must now consider whether Plaintiff's conduct was culpable in filing this action.

In *Brown & Brown, Inc. v. Cola*, 2011 WL 2745808, *9 (E.D. Pa. 7-13-11), the Court stated that "[t]he Third Circuit has held that an exceptional case under section 35(a) 'must involve culpable conduct on the part of the losing party." (citations omitted).  The *Brown & Brown* Court stated that "a district court must make a finding of culpable conduct on the part of the losing party, such as bad faith, fraud, malice, or knowing infringement, before a case qualifies as [] exceptional[]." *Id.* (Citations omitted).

In our case, Defendants first must show that they are the prevailing party, and we have found that they are.  Next, since Defendants have filed the Motion for Attorney Fees under the Lanham Act, the focus of whether Plaintiff's conduct was culpable is the act of filing the lawsuit and not the infringement.  As discussed below, we find that there is not sufficient evidence of intentional bad

faith by Plaintiff in filing its lawsuit to warrant Defendants an award of attorneys fees and costs.  *See*

*Acumed LLC v. Advanced Surgical Services, Inc.*, 561 F.3d 199, 230 (3d Cir. 2009).

Despite Plaintiff's Motion for Voluntary Dismissal of its case, we find that there was a substantial basis for Plaintiff's claims in both of its pleadings that Defendants were liable to it under the Lanham Act and as such, we do not find that Plaintiff acted in bad faith or with malice when it raised its claims under the Act.  Thus, we do not find that there was sufficient  culpable conduct on the part of Plaintiff.  We further find that this case is not an exceptional case in which attorney fees are warranted.  As mentioned, Defendants previously sought to dismiss Plaintiff's Lanham claims in their Rule 12(b)(6) Motion to Dismiss and they were unsuccessful in dismissing any of those claims. (Doc. 17).

Defendants  argue that Plaintiff did not show that its names were used in connection with any goods or services in interstate commerce.   Defendants also argue that Plaintiff should have dismissed Noreen Gorka as a party Defendant since she was not the owner of the website and could not make changes to it.   Defendants contend that only Glassic was the owner of the site. Defendants stated that Gorka was the wife of Glassic and, that Plaintiff named Gorka simply because she had the same address as Glassic and because Glassic had an office in the house owned by Gorka.  Defendants maintain that Plaintiff named Gorka as a Defendant in bad faith and only to harass and punish her.  Defendants cited to the Memo of Plaintiff's Board of Directors in which they referenced punishing the Defendants.

Defendants argue that Glassic's website was not in commerce and not involved with the sale of goods and services.  Defendants stated that Plaintiff's attempt to show their website was involved

in the sale of goods and services to the public in commerce all failed.  However, Defendants conceded that their website had one advertisement on it for profit. Defendants say that their site only criticized Plaintiff and the manner in which the Association was run.  Defendants contend that their website was only set up so Glassic could express his views about Plaintiff and that Glassic's speech was protected under the First Amendment.  Defendants contend that Plaintiff filed its action only after they filed a complaint with the Pennsylvania Attorney General's Bureau of Consumer Protection.  Thus, Defendants assert that Plaintiff's action against Glassic should not have been brought under the Lanham Act and, that it was frivolous and filed in bad faith.

Plaintiff stated that it first learned of Defendants' complaint to the Attorney General on October 20, 2008, which was after its October 18, 2008 meeting in which the instant case against Defendants was authorized.  Plaintiff stated that it provided Defendants with ample time and warning with respect to their website before it filed this action in court.  Plaintiff argued that only after Defendants failed to take corrective action, did it file this lawsuit.

While we agree with Defendants and their evidence that Plaintiff was aware of their complaint to the Attorney General's Bureau of Consumer Protection before Plaintiff's October 18, 2008 meeting, we find that Plaintiff's conduct was not culpable when it filed the instant lawsuit.  As stated, the determination of whether Plaintiff's conduct was culpable centers on the act of filing this lawsuit and not on the alleged trademark infringement.

Plaintiff alleged in its pleadings that, through the filing of its Covenants and its Articles of Incorporation, it owns the trade name Stillwater Lakes Civic Association under the Lanham Act and that it owns all rights to this name.  Plaintiff averred that Defendants used its trade name in

commerce without its authorization, in part, by using their stated domain name[8] containing the

acronym "SLCA", which confused internet users, by failing to advise users that their website was not

the official site of Plaintiff, and by prominently displaying its trade name on their website.  (Doc. 1,

pp. 13-14).

As the Court noted in *Tillery v. Leonard & Sciolla, LLP*, 437 F. Supp. 2d 312, 320,  n. 2

(E.D. Pa. 2006):

> "trademark infringement under Section 43(a) of the Lanham Act,
> 15 U.S.C. § 1125(a). FN2.  In the Third Circuit, to prove either federal
> trademark infringement or unfair competition under 15 U.S.C.
> § 1125(a)(1)(A), a plaintiff must demonstrate: (a) the mark is valid
> and legally protectable; (b) it owns the mark; and (c) the defendant's use of
> the mark to identify goods or services causes a likelihood of confusion.
> *Opticians Ass'n of America,* 920 F.2d at 192.
>
> FN2. 15 U.S.C. § 1125(a) provides:
>
> (1) Any person who, on or in connection with any goods or services,
> or any container for goods, uses in commerce any word, term,
> name, symbol, or device, or any combination thereof, or any false
> designation of origin, false or misleading description of fact, or
> false or misleading representation of fact, which-
>
>> (A) is likely to cause confusion, or to cause mistake, or
>> to deceive as to the affiliation, connection, or association
>> of such person with another person, or as to the origin,

---

[8]As  the Court  noted in *Tillery v. Leonard & Sciolla, LLP*, 437 F. Supp. 2d 312, 318,  n.1
(E.D. Pa. 2006):

> "A domain name is a way to identify and locate computers and resources
> connected to the Internet.... It tells users where to find a particular web page,
> much like a street address or phone number tells people where to find a particular
> home or business. No two organizations can have the same domain name.
> *Strick Corp. v. Strickland,* 162 F.Supp.2d 372 (E.D.Pa.,2001) (internal citations
> omitted.)

sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

In order to prove ownership of a trade name, Plaintiff "must establish prior rights in the mark by use in commerce." *Id.* at 323(citation omitted); *Douglas v. Osteen*, 317, Fed.Appx. 97, 99 (3d Cir. 2009).

Plaintiff claimed that the names Stillwater Lakes and Stillwater Lakes Civil Association, as well as any derivative names, were its protected trade names which it alleged were used in commerce by Defendants in connection with advertising, marketing, sale of goods and services, and dissemination of information. (Doc. 1, p. 13). Plaintiff averred that the stated names were its exclusive property which it has owned since 1976 by virtue of its filing of Article of Incorporation with the State. (*Id.*). Defendants now argue that Plaintiff failed to show that its names were used with any goods and services in commerce as required.

Both parties submitted numerous exhibits with respect to Defendants' Motion for Attorney Fees under the Lanham Act. (Doc. 87, Exs. 1-56 and Docs. 94-1 and 94-2). In its opposition brief, Plaintiff details its evidence regarding its claims under the Lanham Act as follows:

As part of Discovery, Defendants produced fifty-six pages showing the registration/contact history for the domain names. See Exhibit G attached hereto. [Doc. 87] Importantly, these documents show that 2339 Nadine Bld., Pocono Summit, PA 18346 was the address for the Registrant Contact, Administrative Contact, and Technical Contact for stillwaterlakes.net on November

7, 2007 (p. 1-2), April 30, 2008 (p. 3-4) August 8, 2008 (p. 5) and for stillwaterlakes.com on June 21, 2008 (p. 35). Keep in mind that the June and August dates were after Gorka became a director.

Moreover, the fax that was sent to the Department of State registering Defendant Stillwater Lakes Community Activist, Inc. as a nonprofit corporation came from a fax machine belonging to YSTRESS (SLCA00220). Y-Stress, Inc. is a company for which Gorka is self-admittedly the President (Answer to Interrogatories at Paragraph 1) and has been identified as owner (see http://www.poconorecord.com/apps/bpcs.d11/article?AID=/20080706/NEWS02/807060307/-1/rss01).

Y-Stress is also important in that Defendants produced documents showing that Y-Stress, Inc., as well as a y-stress.com email account, were listed in the Registrant, Administrative and Technical Contact information for stillwaterlakes.net on November 14, 2007 (Exhibit G at p. 1-2), April 30, 2008 (Id at p. 3-4) and August 8, 2008 (Id at p. 5).  The email address listed for the Administrative and Technical Contacts were also from a y-stress.com account for stillwaterlakes.com on June 21, 2008.  (Id. at p. 35).

Further, Plaintiff produced letters from Gorka, dated December 30, 2006 and December 12, 2007, wherein she specifically uses Box 2286, Pocono Summit, Pennsylvania 18346 for her return address (SLCA01205, SLCA01206). This is important because Defendants produced documents showing that on June 21, 2008 (Exhibit G at p. 35), December 30, 2008 (Id at p. 39-40), March 14, 2009 (Id. at p. 41-42), May 27, 2009 (Id. at p. 43-44), June 17, 2009 (Id. at p. 45-46), June 21, 2009 (Id. at 47-48), September 6, 2009 (Id. at p. 49-50) and October 15, 16 and 18, 2009 (Id. at p. 51-56) the address for the Registrant, Administrative Contact, and Technical Contact for stillwaterlakes.com was Box 2286, Pocono Summit, Pennsylvania 18346. [FN7]  This was also the address for the Registrant of stillwaterlakes.net as of November 16, 2008 (Id. at p. 7), January 15, 2009 (Id. at p. 9), January 30, 2009 (Id. at p. 11), February 16, 2009 (Id. at p. 13), April 24, 2009 (Id. at p. 15), June 15, 2008 (Id. at p.17), August 6 and 10, 2009 (Id. at p. 19, 21) and October 1, 18 and 19, 2009 (Id. at p. 23, 25, 27). [FN 8]

Documents subpoenaed from godaddy.com also reveal that, at all times from June 20, 2007 through July 23, 2010 (the date of the response), the Billing Information as well as the Shipping Information for each charge related to the domain names and/or website showed an address as 2339 Nadine Blvd., Box 2286, Pocono Summit, PA 18346 (GD000071-000208). [FN9] They all show a y-stress.com email account on the contact info.

25

Additionally, Defendants admit that both Gorka, as well as Glassic, used the phone number 5708942371.  See Answers to Complaint and Amended Complaint at Paragraph 28.  This number has also been used by Y-Stress, Inc. (SLCA00220).  This is the same phone number that is listed for the shipping and billing information on the records from godaddy.com (GD000071-000208).  It was also in the information for Administrative Contact and Technical Contact for stillwaterlakes.com on June 21, 2008 (Exhibit G at 35-36) and October 17, 2008 (Id. at p. 37-38), for the Registrant Contact, Administrative Contact and Technical Contact for stillwaterlakes.net on November 14, 2007 (Id. at p. 1-2) and April 30, 2008 (Id. at p. 3-4) and for the Administrative and Technical Contacts for stillwaterlakes.ent on August 8, 2008 (Id. at p. 5).

Further, Defendants cannot deny that Gorka was extremely active with the website at least prior to becoming a director. She was repeatedly listed as the "Administrator" in the forum (ex SLCA00273, SLCA00276) and she solicited and received payment for an advertisement. See Jack Johnson Deposition, 8/26/10, at pp. 12-13. Moreover, on February 28, 2009, Defendants provided this Court with a document showing the website's vital statistics. See Exhibit A, p. 10, to Defendants Reply Brief in Support of 12(b)(6) Motion. This document reveals that even then, eight months after Gorka had become a director and two months after this case was filed, she rated 3rd on Top Topic Starters and 7th on Most Time Spent Online. See Exhibit H attached hereto.

Additionally, prior to transferring the domain names to Activist, they had been registered in the name of Defendant "Stillwater Lakes Citizens." While Defendants now claim that "Stillwater Lakes Citizens is simply a name,"10 it is certainly reasonable to conclude that Gorka was part of this group.

FN 7    Plaintiff produced a document showing the same for November 28,2 008.  See SLCA01142.

FN 8    It should be noted that false information was most provided to godaddy.com with respect to the Administrative and Technical contacts.  See Defendants Answers to Request for Admissions at No. 6 and 7.

FN 9    Defendants objected to Plaintiff's request for documents showing who owned the credit cards that were used to pay for the website hosting and domain name registration and the source of the money to pay those charges.

(Doc. 87, pp. 8-11).[9]

Plaintiff also explain why it filed its Motion for Voluntary Dismissal by stating that "since the initiation of this case, Defendants have made changes to the website that 'decrease the chance of confusion regarding Plaintiff's involvement and/or affiliation with the website.'" (*Id.*, p. 12).  Plaintiff also points out that while Defendants contend that the changes were made to the website on February 28, 2009, this was more than two months after it filed this case.  (*Id.*).  We find this shows, in part, that Plaintiff's conduct was not culpable in commencing this action since Defendants did in fact make changes to the challenged website after Plaintiff filed its Complaint.

As repeatedly stated above, with respect to Defendants' Motion for Attorney Fees under the Lanham Act, Defendants must show intentional bad faith by Plaintiff in filing its lawsuit to warrant an award of attorneys fees and costs.  *See Acumed LLC v. Advanced Surgical Services, Inc.*, 561 F.3d at 230.  We find that Plaintiff had a substantial basis to file its action against Defendants.  As the Court previously found, when it denied Defendants' Motion to Dismiss, Defendants' alleged conduct and their alleged use of Plaintiff's trade name on the internet had a sufficient connection to commerce for purposes of the Lanham Act.  *See Raintree Homes, Inc. v. CBS Networking Services*, Civil No. 01-1277, M.D. Pa., 5-17-02 Memo.  Also, as Plaintiff now points out in its Doc. 87 brief, it had produced an abundance of evidence showing that it sold goods and services in interstate commerce.  As Plaintiff states:

> Defendants claim that Plaintiff does not sell products or services in commerce. This allegation is baseless. The fact that an organization is a nonprofit and sells no goods

---

[9]All of Plaintiff's exhibits are attached to Doc. 87.

does not take it out of the protection of the law of unfair competition. See 2
J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 9:5
(4th ed. 2011). Further, the Patent and Trademark Office (the "PTO") has
registered many third-parties service marks for homeowner association services.
Examples, taken from the PTO's online database, are attached hereto as Exhibit J.
The PTO classifies such services into Classes 35, 36 and 37. Acceptable descriptions
of services from the PTO's online database "The US Acceptable Identification of Goods
and Services Manual" ("Trademark ID Manual") can be found at
http://tess2.uspto.gov/netahtml/tidm.html.

Additionally, Plaintiff has produced and made available thousands of
documents related to its marketing, advertising, dissemination of information, and its
sale of goods and services. These including decades of (1) records related to
maintenance staff as well as third party vendors providing maintenance services
such as plumbing, sewer maintenance, plowing, pavings, etc.; (2) builder packets
submitted each time a property owner wants to build a home; (3) newsletters
containing advertisements [FN 12]  and announcements which were mailed to
the unit owners, many of whom lived out of state; (4) documents regarding its
contracted management companies; (5) unit owner lists; (6) invoices and billing
information for the unit owners, including many who lived out of state;
(7) proposals and invoices from in and out of state merchants and vendors;
(8) inquires and replies to and from outside parties about the community and
(9) notices placed in the Pocono Record newspaper by Plaintiff soliciting bids
and seeking job applications.

> FN 12  The newsletter was first produced in house and then by
> a firm that sought advertising dollars in exchange for publishing.

Moreover, Defendants admit that Plaintiff issues resale certificates as mandated
by statute in return for a fee. See 68 Pa. C.S. § 5407; Defendants Answers to
Request for Admissions at Paragraph 17. See also the Affidavit of Former
Community Manager Patricia Gleason, attached hereto as Exhibit K, at Para.7, 8, 9,
11 and 23 regarding resale certificates and the Association's other information services.

Plaintiff also produced documents showing that it was solicited for and actually
did engage in the sale of real estate (SLCA01183, SLCA01186, SLCA01187,
SLCA01189, SLCA01191, SLCA01192) and leased its clubhouse (SLCA02800,
SLCA002806). Further, Plaintiff produced a letter from Pennsylvania's
Department of Revenue which provides, in part, as follows: "Welcome to
Pennsylvania's Business Community. The Department of Revenue has been advised
that your firm is now authorized to transact business in the Commonwealth of
Pennsylvania." (SLCA01202).

Finally, it is worth noting that Plaintiff has also maintained its own website, which alone evidences commercial activity. See Raintree Homes, Inc. v. CBS Networking Services, Civil No. 01-1277, M.D. Pa., 5-17-02 Memo. Defendants have already provided this court with proof that Plaintiff sought advertisers for its official site. This came in the form of a forum page from Defendants' website that contained a post by April Bunje, who was one of Plaintiff's Board Members at the time. On August 22, 2008, 08:37:51 AM, Bunje wrote, in part, as follows:

> Slowly but surely the official web-site is functioning… ***Spread the word about advertising on it***. Advertising on it(the website) will pay for itself and if that happens it will be less money out of our pockets to keep it running. Advertising information will be obtained once an e-form is filled out.

Page 12 of Exhibit 1 to Defendants Reply Brief for 12(b)(6) Motion, attached hereto as Exhibit L. [FN 13]

> FN 13  See also Affidavit of former Community Manager Patricia Gleason, attached hereto as Exhibit K, at Para. 18. Plaintiff also provided Defendants with a copy of the official website's current eform (SLCLA00040) which is titled "**ADVERTISING INFORMATION REQUEST"** and provides: "Our Community web site offers several great advertising opportunities to those who would like more business exposure to 500 plus single-family residences of our community.  Opportunities are available for classified advertising and site sponsorships.  For more information on these opportunities, please fill out and submit this form. You will be sent advertising opportunity and rate information as well as an order form.  Thank you!"

(Doc. 87, pp. 15-17).

We also find that Plaintiff stated a trade name infringement claim under the Lanham Act in its pleadings since it alleged Defendants were  attempting to obtain commercial gain from their use of their (Defendants') website.   (Count I).   Plaintiff sufficiently demonstrated that Defendants generated revenue from advertising on their website.  Exhibits A and F attached to Plaintiff's original Complaint (Doc. 1) showed that businesses advertised on Defendants' website and that Defendants

were soliciting advertisers on their site.  At oral argument, Defendants conceded that their website had an advertisement for profit.  Also, as Plaintiff points out (Doc. 87, p. 19), Defendants admitted that they were paid for at least one advertisement on the website, citing to Defendants' Amended Answer at ¶ 54.   Thus, we find that Plaintiff properly alleged that Defendants' website had commercial uses.

We also find that Plaintiff was not required to have a registered trademark in order to file  its claim under the Lanham Act, *i.e.* Count I, if its unregistered mark is recognized by the public as identifying its goods or services.  *See Douglas v. Osteen, 317 Fed.Appx.* at 99("because [Plaintiff's] mark is unregistered, to prevail, [Plaintiff] must also show that he was the first to adopt the mark in commerce, he has continuously used the mark in commerce since its adoption, and his mark is inherently distinctive or has acquired secondary meaning.")(citations omitted); *E.T. Browne Drug Co. v. Cococare Products, Inc.*, 538 F. 3d 185, 191 (3d Cir. 2008).

Based on Plaintiff's pleadings in Count I, we find that Plaintiff sufficiently alleged ownership of its name since 1976, of a valid and protectable mark, and the likelihood of consumer confusion to state a claim of trade name infringement under § 1125(a) of the Lanham Act.  *See Douglas, supra* at 369 (quoting *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F. 3d 198, 210-11 (3d Cir. 2000) ("stating that 'a likelihood of confusion exists when 'consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark'"))(citation omitted) and *(Qwest Commc'ns Int'l v. Cyber-Quest, Inc.*, 124 F. Supp. 2d 297, 304 (M.D. Pa. 2000)("stating that a motion to dismiss a trademark infringement claim may be granted if 'no reasonable factfinder could find a likelihood of

confusion on any set of facts that Plaintiff could prove')).

	We also find that Plaintiff properly named Gorka as a Defendant since she was sufficiently involved in Defendants' website and Plaintiff alleged that she sought advertises for the website. Further, as Plaintiff stated, it sent a cease and desist letter to Defendants and, subsequently, Glassic transferred control of the website to him alone and took it out of Gorka's name.  We agree entirely with Plaintiff and its following contentions as to why it was not culpable in naming Gorka as a party Defendant:

	First, it is worth nothing that Defendants, without any qualification, admitted Paragraph 23 in the original Complaint which reads: "On or about August 2006 and June 2008, Defendants Gorka, Glassic and Citizens registered the domain names www.stillwaterlakes.net and www.stillwaterlakes.com, respectively."  Further, as part of discovery, Defendants produced a completed questionnaire whereby Gorka specifically admits that "my husband, Michael Glassic, **and myself**, registered the domain name stillwaterlakes.net and started a website."  Exhibit A attached hereto (emphasis added). [FN 5] Defendants also produced no less than three different documents wherein they acknowledge that "Glassic and Gorka started the website" Exhibits B, C, D attached hereto.  Defendants also admit, in the joint case management plan, that "Defendants Gorka and Glassic licensed the domain name of stillwaterlakes.net . . ."  Joint Case Management Plan at 5.

	In discovery, Plaintiff either provided or made available the following: (1) audiotape from an October 24, 2006 meeting whereat Gorka admits to being involved in beginning the website, (2) a disclosure on the website that "Glassic and Gorka started the website . . ." (SLCA01150); and (3) Gorka's letter dated December 12, 2007 wherein she specifically states "we started the website www.stillwaterlakes.net" (SLCA01206).

	Further, at all times, Plaintiff has been aware that 2339 Nadine Bld., Pocono Summit, PA 18346 was a property where Gorka lived, was an owner and used as an address. [FN6] Importantly, this property has always been identified as the Registered Office Address provided to the Pennsylvania Department of State for Stillwater Lakes Community Activist, Inc. (SLCA00112, SLCA00156, SLCA00220, SLCA01155, Exhibit E attached hereto).  Moreover, since June 7, 2010, Gorka has owned the property by herself.  See Exhibit F attached hereto.  In other words, the domain names are currently registered to a company whose office is owned

solely by Gorka.

(Doc. 87, pp. 7-8)(footnotes omitted).

Additionally, at the time it commenced this action, Plaintiff claimed that it was involved in a lot of economic activity and commerce as well as goods and services. We have quoted Plaintiff's connection with goods and services in commerce above from its Doc. 87 brief and we do not repeat it. Suffice to say that we concur entirely with Plaintiff on this issue.

As Plaintiff pointed out, and as stated above, the Court must perform at two-step process in determining if a case is "exceptional." *See Green v. Fornario*, 486 F.3d 100, 103 (3d Cir. 2007). "The first [step] requires a showing based on clear and convincing evidence that the losing party engaged in culpable conduct." *American Eagle Outfitters, Inc., v. Lyle & Scott Ltd.*, 2009 WL 3055318, *2 (W.D. Pa. 9-21-09) (citations omitted). "Absent this showing, the exceptionality inquiry ends." *Id*. citing *Green*, 486 F.3d at 103-04. Since Defendants were the prevailing parities, as mentioned, the Court must focus on Plaintiff's culpable conduct in filing its lawsuit and not on the alleged infringement. *Id*. at *3 (citations omitted). As discussed, based on the circumstances of this case, we do not find that Plaintiff's conduct was culpable, such as bad faith, fraud and malice, when it filed this action. Thus, we find that the inquiry ends as step one, and we will recommend that Defendants' Motion for Attorney Fees under the Lanham Act (Doc. 74) be denied.

**IV. Recommendation.**

Based on the foregoing, it is respectfully recommend that the Court grant Plaintiff's Motion for Voluntary Dismissal with Prejudice **(Doc. 69)**. It is also recommended that Defendants' Motion for Rule 11 Sanctions **(Doc. 72)** be denied. Further, it is recommended that Defendants' Motion

for Attorney Fees and Costs under the Lanham Act **(Doc. 74)** be denied.  Finally, it is recommended

that Defendants' oral request for an evidentiary hearing be denied.




                                        **s/ Thomas M. Blewitt**
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: December 13, 2011**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STILLWATER LAKES CIVIC            :
ASSOCIATION, INC.,                :        CIVIL ACTION NO. **3:CV-08-2264**
                                  :
                                  :        (Judge Mariani)
                Plaintiff         :        (Magistrate Judge Blewitt)
                                  :
        v.                        :
                                  :
NOREEN GORKA, et al.,             :
                                  :
                Defendants        :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **December 13, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis

34

of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                          **s/ Thomas M. Blewitt**
_____  **THOMAS M. BLEWITT**
                                            **United States Magistrate Judge**

**Dated: December 13, 2011**