THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STILLWATER LAKES CIVIC ASSOC., INC.:
                      :
          **Plaintiff**      :
  **v.**                     :     **3:08-CV-2264**
                      :     **(JUDGE MARIANI)**
**NOREEN GORKA,** et al.,     :
                      :
       **Defendants**   :

## MEMORANDUM OPINION

### I. Introduction

Before the Court is Defendants' Motion for Relief from Judgment. (Doc. 137). Upon

consideration of the briefs and evidence presented at a hearing held on September 11,

2013 with the parties' and Attorney Collins's participation, the Court will deny Defendants'

motion. The Court also will deny Defendants' Motion for Hearing (Doc. 151) as moot.

### II. Background

Plaintiff initiated this case in December 2008 against Defendants for alleged

infringement of its trade name under the Lanham Act and common law, unfair competition,

misappropriation of corporate name, anti-dilution of trade name, and cybersquatting. (*See*

Complaint, Doc. 1, ¶¶ 63-157).

After the Court denied Defendants' motion to dismiss and after unsuccessful

settlement negotiations, Plaintiff filed an Amended Complaint on January 28, 2010 setting

forth substantially the same claims. (Doc. 48). In September 2010, Defendants' first

attorney, Stewart Rosenblum, filed a Motion to Withdraw as Attorney (Doc. 61) as Defendants' second attorney, Marshall Anders, had entered his appearance on their behalf the preceding month. (Doc. 57).

In May 2011, Plaintiff filed a Motion to Dismiss Voluntarily. (Doc. 69). Defendants opposed the motion and also filed a Motion for Sanctions (Doc. 72) and a Motion for Attorney's Fees. (Doc. 74). On December 13, 2011, Magistrate Judge Blewitt issued a Report & Recommendation ("R&R") in which he recommended granting Plaintiff's motion for voluntary dismissal, denying Defendants' motion for sanctions, and denying Defendants' motion for attorney's fees. (Doc. 101).[1] In recommending that the Court grant Plaintiff's motion for voluntary dismissal, Judge Blewitt recognized that "Defendants are the prevailing party for purposes of their Doc. 74 Motion [for attorney's fees]." (Doc. 101, at 20).

In discussing whether Defendants were entitled to attorney's fees, Judge Blewitt concluded that

Despite Plaintiff's Motion for Voluntary Dismissal of its case, we find that there was a substantial basis for Plaintiff's claims in both of its pleadings that Defendants were liable to it under the Lanham Act and as such, we do not find that Plaintiff acted in bad faith or with malice when it raised its claims under the Act. Thus, we do not find that there was sufficient culpable conduct on the part of Plaintiff. We further find that this case is not an exceptional case in which attorney fees are warranted. As mentioned, Defendants previously sought to dismiss Plaintiff's Lanham claims in their Rule 12(b)(6) Motion to Dismiss and they were unsuccessful in dismissing any of those claims. (Doc. 17).

(Id. at 21).

---

[1] The case had been transferred to the undersigned judge in November 2011.

Eight days later, Attorney Anders filed a Motion to Withdraw as Attorney (Doc. 102),

stating that Defendants "refused to follow the advice of counsel on several occasions,

preferring to be guided by their own advices," and as such, he "did not have a productive or

viable attorney/client relationship with the Defendants." (*Id.* at ¶¶ 6-7). In his motion, he

represented that he had the consent of his clients. (*See* Certificate of Concurrence, Doc.

105). Based on this representation, the Court granted his motion to withdraw as counsel on

December 28, 2011. (Doc. 107).

On January 4, 2012, Defendants Gorka and Glassic filed a Motion for

Reconsideration of the Order granting Attorney Anders's motion to withdraw as counsel.

(Doc. 112).[2] In their motion, they stated that they "were asked to sign a Praecipe to

Substitute Appearance, but declined because they did not concur with the request this late

in the proceedings," (*Id.* at ¶ 3), an allegation that squarely contradicted Attorney Anders's

representation to the Court. Because of this contradiction, the Court scheduled a hearing

and oral argument on Defendants' Motion for Reconsideration for February 9, 2012. (*See*

Jan. 27, 2012 Order, Doc. 119). In that Order, the Court suspended the deadline for

submitting Amended Objections to the R&R. (*Id.*).

On February 9, 2012, the Court heard sworn testimony from Attorney Anders and

Defendants Gorka and Glassic. After hearing their testimony, the Court issued an Order

denying Defendants' Motion for Reconsideration under Pennsylvania Rules of Professional

---

[2] Meanwhile, Defendants had filed Objections to the R&R without the benefit of counsel on December 29, 2011. (Doc. 108). They then filed a Motion to Amend/Correct Objections on January 10, 2012. (Doc. 115).

Conduct 1.16(b)(4), (5), (6), and (7).[3] (Doc. 123, at ¶ 1). In light of this ruling, Defendants

were granted ninety days from the date of the Order to find new counsel. (*Id.* at ¶ 2). During

that time, the parties were excused from all further filings and the case was held in

abeyance. (*Id.*).

On May 14, 2012, Defendants' third attorney, Michael D. Collins, entered his

appearance on their behalf. (Doc. 124). As such, the Court directed Defendants to file their

Revised Objections to the R&R by June 15, 2012. (Doc. 125, at ¶ 1). Upon Defendants'

motion, the Court later extended the deadline to June 22, 2012. (Doc. 129).

On June 22, 2012, Attorney Collins, on behalf of Defendants, submitted Revised

Objections to the R&R. (Doc. 130). In the Revised Objections, Attorney Collins stated:

I.      In connection with plaintiff's Motion to Dismiss Voluntarily with
        prejudice (Doc. 69) the Defendants hereby withdraw their opposition to
        the motion and, in turn, their objections to that portion of the report and
        recommendation that the Court grant plaintiff's Rule 41 motion to
        dismiss voluntarily the complaint with prejudice.

II.     In connection with defendants' Motion for Sanctions, defendants
        hereby request permission to withdraw the motion or, in the
        alternative, to withdraw their objections to that portion of the report and
        recommendation that finds defendants failed to comply with the 21 day
        safe harbor provision of Rule 11 and that failure to comply with the
        safe harbor rule is the defect sufficient to sustain the magistrate

---

[3] The relevant provisions of the Rules of Professional Conduct state:

a lawyer may withdraw from representing a client if: . . . (4) the client insists upon taking action
that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement; (5)
the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services
and has been given reasonable warning that the lawyer will withdraw unless the obligation is
fulfilled; (6) the representation will result in an unreasonable financial burden on the lawyer or
has been rendered unreasonably difficult by the client; or (7) other good cause for withdrawal
exists.

> judge's recommendation that defendants' motion for sanctions under
> F.R.Civ.P. Rule 11 be denied.

> III.    In connection with defendants' Motion for Attorneys Fees and Costs,
> withdraw their objection to the Report and Recommendation to the
> portion that basis [sic] the denial on the grounds that the motion for
> attorney fees was not supported by exhibits or affidavits. (See
> M.D.P.A. LR 7.3 Exhibits and Other Documents Substantiating
> Motions. . . . Defendants further withdraw their objection to the Report
> and Recommendation to the extent that it denied defendants' oral
> request for an evidentiary hearing at oral argument as untimely").

(Id. at I-III). On June 29, 2012, the Court issued an Order (1) granting Defendants

permission to withdraw the previous Objections (Doc. 108) to the R&R, (2) adopting the

R&R, (3) denying Defendants' Motion for Sanctions, (4) denying Defendants' Motion for

Attorney's Fees, (5) granting Plaintiff's Motion to Voluntarily Dismiss with Prejudice, and (6)

closing the case. (Doc. 132).

Nearly a year later, Defendant Glassic filed a Motion for Extension of Time & Page

Limit. (Doc. 133). On June 26, 2013, he filed a Motion to Terminate Attorney Collins from

Representing Defendants. (Doc. 136). On June 28, 2013, he also filed a Motion for Relief

from Judgment. (Doc. 137). In his Brief in Support of his motion, Defendant Glassic stated

that "[o]n June 22, 2012, Attorney Michael Collins filed Amended Objections to the

Magistrate Judge's Report and Recommendations without the defendants' authorization or

knowledge as to its contents, that were in complete contrast with what was agreed upon."

(Doc. 138, at 5).

The Court scheduled a hearing on Defendants' pending motions for September 11, 2013. (See Sept. 5, 2013 Order, Doc. 144). At the hearing, the Court heard sworn testimony from Attorney Collins and Defendant Glassic, and also heard argument from Collins and both Defendants. Counsel for Plaintiff participated to a limited extent. At the conclusion of the hearing, the Court orally granted Defendants' Motion to Terminate Attorney Collins and memorialized the verbal order in a written order. (Doc. 147).

The parties also expressed a willingness to submit to mediation one final time. As a result, the Court referred the case to Magistrate Judge Schwab (Doc. 148), who held a settlement conference on October 7, 2013. Unfortunately, the negotiations were unsuccessful, prompting this Court to rule on Defendants' Motion for Relief from Judgment. (Doc. 137).

## III. Analysis

Defendants filed their Motion for Relief from Judgment (Doc. 137) "on the grounds of mistake, inadvertence, excusable neglect, new evidence, fraud, and the exceptional circumstances that ensued after the Court directed the Defendants' to file their Revised Objections to Magistrate Judge Blewitt's Report and Recommendation." (Doc. 138, at 1). Both Defendants swear that they "never authorized Attorney Collins to file Amended Objections to ask the Court to adopt the Magistrate Judge's Report and Recommendation, withdraw the motion for Attorney's fees and costs, or the motion for sanctions." (Doc. 137, Ex. A, at ¶ 5; Doc. 137, Ex. B, at ¶ 13).

6

In an affidavit in support of their motion, Defendant Glassic swears that he first learned that Attorney Collins had withdrawn all objections to the R&R "[o]n or about February 28, 2013, after talking to another Attorney regarding Malicious Prosecution for the Plaintiff's actions." (Doc. 137, Ex. B, at ¶ 12).

"On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (3) fraud . . . misrepresentation, or other misconduct of an adverse party, . . . or (6) any other reason that justifies relief." FED. R. CIV. P. 60(b)(1), (3), (6).[4]

## 60(b)(1)

Defendants, as the prevailing party, seek relief from judgment because they wish to "get the record straight." (Transcript of Sept. 11, 2013 Hearing, Doc. 152, at 8:20-22).

### Excusable neglect

"The test for 'excusable neglect' is equitable, and requires us to weigh the 'totality of the circumstances.'" *Nara v. Frank*, 488 F.3d 187, 193-94 (3d Cir. 2007) (internal citations omitted). "In particular, we consider 1) the danger of prejudice to the other party; 2) the length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay—and whether it was within the movant's control; and 4) whether the movant acted in good faith." *Id.*

---

[4] Defendants filed their motion for relief from judgment pursuant Rule 60(b) of the Pennsylvania Rules of Civil Procedure. Because this is a federal case, the Court will apply the Federal Rules of Civil Procedure, which are substantively identical to the state rules.

7

This case had been closed for nearly a year before Defendants moved for relief from judgment. (Doc. 137). Plaintiff filed a motion to voluntarily dismiss the case as early as May 2011. (Doc. 69). To grant Defendants' motion at this stage when Plaintiff believed the case had been resolved and Defendants had been declared the prevailing parties would prejudice Plaintiff by forcing it to litigate claims it attempted to give up over two years ago.

While Defendants are technically within the one-year window in which to file a Rule 60(b) motion,[5] they could have raised their concerns about Attorney Collins's representation as soon as he filed their Revised Objections, much as they did when Attorney Anders filed his Motion to Withdraw Representation. Attorney Anders filed his Motion to Withdraw (Doc. 102) on December 21, 2011 which the Court granted on December 28, 2011 (Doc. 106), and Defendants filed their Motion for Reconsideration on January 4, 2012 (Doc. 112). The Court was able to resolve the issue of Attorney Anders's representation of Defendants quickly because Defendants alerted it of the dispute with Attorney Anders in a timely manner. Similarly, though the Court adopted the R&R a week after receiving Defendants' Revised Objections (Doc. 123), it easily could have held a hearing much earlier than it did on September 11, 2013 had Defendants acted in a timelier manner.

Furthermore, Defendants claim that they did not learn of this Court's adoption of the R&R until approximately February 28, 2013.[6] Yet, as early as April 15, 2011, Attorney

---

[5] "A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." FED. R. CIV. P. 60(c)(1).

[6] To the extent Defendants claim their "discovery" of Attorney Collins's actions constitutes "new evidence," the Court rejects this assertion because the "newly discovered evidence" exception requires that the

8

Anders advised Defendants to monitor this case's progress through the Court's PACER

system. (Doc. 112, at App. 15). At the September 11, 2013 hearing, the Court inquired of

Defendants:

> THE COURT: There's been some suggestion in the record that, very early on,
> your prior attorney Mr. Anders advised you to monitor the Electronic Court
> Filing system documents, and my understanding is you have access to that.
> Are you telling me that you never saw the document that Mr. Collins filed on
> June 22, 2012?
>
> MS. GORKA: No, I did not.
>
> THE COURT: Did you not look for it?
>
> MS. GORKA: I haven't been on the PACER system, Mike has.

(Doc. 152 at 8:4-12). Mr. Glassic never answered the question of whether he had seen the

Revised Objections to the R&R filed by Attorney Collins on the PACER system.

In *Nara*, the Commonwealth had failed to file timely objections to a Report &

Recommendation, resulting in the district court's adoption of it. The Commonwealth then

filed a Rule 60(b)(1) motion, which the district court denied. On appeal, the Third Circuit

found:

> There is no evidence the Commonwealth acted in bad faith. Nevertheless, the
> Commonwealth's overall negligence in handling the matter precludes us from
> finding "excusable neglect." First, the District Court found that the Magistrate
> Judge served the R & R upon Mr. Nara and the Commonwealth's attorneys
> by first-class mail. The Commonwealth has presented no evidence to the
> contrary. Second, attorneys practicing in the Western District of Pennsylvania
> were under a standing order to register with the Case Management/Electronic
> Case Files (CM/ECF) system by July 1, 2005. If the Commonwealth's

---

evidence "with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." FED. R. CIV. P. 60(b)(2).

> attorneys had complied with that order, they would have received immediate
> electronic notification that the Magistrate Judge had issued the R & R and
> could have accessed it by hyper-link. Finally, the Commonwealth failed to
> respond to the District Court's order for 17 days. Despite the urgency of the
> situation, the Commonwealth has offered no excuse for this latter delay. We
> cannot conclude the Commonwealth's failure to object to the R & R for over
> six weeks was excusable.

*Id.* at 194.[7] The Third Circuit also found that "the Commonwealth's failure to object was not

caused by forces outside its control," but rather, "[i]f the Commonwealth's attorneys had

complied with the Western District's standing order, they would have had immediate notice

of the R & R's filing and access to it." *Id.* at 197.

Based on Defendants' demonstrated ability to monitor the docket by responding to

Attorney Anders's Motion to Withdraw and the evidence they submitted which shows he

advised them to monitor the progress of this case via PACER, the Court concludes that the

delay was within Defendants' control.

Thus, if the Court granted Defendants' Motion for Relief from Judgment (Doc. 137),

(1) Plaintiff would be prejudiced, (2) the case will have been ongoing for five years with little

progress made, and (3) the ability to file timely objections to Attorney Collins's actions was

entirely within Defendants' control. Without discussing whether Defendants acted in good

faith, the Court finds there was no excusable neglect that would warrant granting

Defendants' Motion for Relief from Judgment.

---

[7] "In early 2001, the federal courts began implementing the Case Management/Electronic Case Files (CM/ECF). Under the program, federal courts and parties file and issue all documents electronically (with certain exceptions for pro se prisoners, etc.). Attorneys of record receive email notices, containing hyperlinks to documents, immediately upon every filing." *Nara*, 488 F.3d at 194, n.11.

## Mistake, Inadvertence, Surprise

The exchange of emails between Defendant Glassic and Attorney Collins leading up to the filing of Defendants' Revised Objections shows that the two were in regular contact. (Doc. 138, Ex. B). It is extremely difficult for this Court to believe that between June 11, 2012 and June 20, 2012, Attorney Collins and Defendant Glassic exchanged multiple rounds of e-mails discussing their approach to the Revised Objections, and that after June 22nd when Attorney Collins filed the Revised Objections, Defendants were ignorant as to Attorney Collins's action for over eight months.

Attorney Collins was sworn in at the September 11, 2013 hearing and testified that he had conversed with Defendants by telephone on either June 20th or 21st, 2012, after an e-mail dated June 20th from Defendant Collins. At the hearing, he had the following exchange with Defendant Gorka:

Q. Are you saying that you spoke with both Michael and I on the 20th or the 21st or 22?

A. Yes.

Q. And were we at the house? Where were we?

A. My recollection was a telephone call.

Q. Do you know which date?

A. I'm sorry?

Q. Do you know which date? We're saying it's either the 20th or the 21st.

A. No, I'm not precise. My best recollection is it would have been on the 20th, although, it may have been on the 21st. It was following Mr. Glassic's email to me of the 20th, in which he makes reference to affidavits. And I realized at that stage that my thinking had developed to the point that an opposition was not or objections was not indicated in this case. And that's why there's no follow up emails concerning affidavits, because we had reached an agreement at that time and an understanding that those affidavits would not be necessary, because we would not be filing objections to the report.

(*Id.* at 56:6-58:25). Attorney Collins gave the following explanations for withdrawing the

Defendants' original Objections to the R&R:

A. What I very specifically said were, one, there are a number of problems that were identified in the Report and Recommendation, which I felt were the fault of your previous counsel. One had to do with the Rule 11 sanctions, because there had not been the Safe Harbor motion filed, we had that conversation. That subject was in our conversation.

The second one had to do with sanctions. And I had also felt that Judge Blewitt, for procedural reasons, had a good point to make that sanctions were not properly preserved, procedurally. . . .

I further said that, in connection with that, this was not the time and place to litigate the issues, because we are not going to be bound by anything that was said in the report, for purposes of our malicious prosecution. That was my opinion, right or wrong, that was my opinion, and I shared that with you.

I also remember, very distinctly, as part of this conversation, as we made this important decision, I asked you about emotional distress and the effect the filing of this lawsuit had on you, personally, and you responded very strongly and poignantly back to me that, indeed, you had. And that was one of the reasons for moving forward with concluding this with finality, taking that as a prevailing party position, and then pursuing the malicious prosecution action. We had that discussion in that telephone conversation, prior to my filing the amended objections and supporting brief.

12

(*Id.* at 57:9-58:14). He further testified that he "did not want a Federal Court, on an issue of a motion for voluntary dismissal, to be making determinations" that "would have a preclusive effect if you had a full-blown evidentiary hearing." (*Id.* at 59:10-13).

During the Court's examination of Defendant Glassic, his sworn testimony largely dovetailed with that of Attorney Collins:

> Q. So [Attorney Collins] wasn't going to pursue the motion for attorney's fees or motion for sanctions in this case?
>
> A. Exactly.
>
> Q. You understood that?
>
> A. That I understood.
>
> Q. Did you tell him, "No, I want you to pursue those"?
>
> A. I did not.
>
> Q. So you understood that Mr. Collins's intention was not to pursue the motion for attorney's fees or the motion for sanctions? You understood that?
>
> A. I did understand that, yes.

(*Id.* at 44:22-45:7). The following exchange with the Court took place later:

> Q. What understanding did you have?
>
> A. I had the understanding that he was just going to let the motions go, as far as not pursuing them, but at the same time put in our objections to the Report and Recommendation, just so that we could get the Report and Recommendation of record rejected or terminated, and then the case was going to be closed. Because -- and then we started working almost immediately on the malicious prosecution claim.

(*Id.* at 46:19-47:12). After the Court concluded its questioning of Defendant Collins, counsel

for Attorney Collins asked him a few follow-up questions:

> Q. You understood that, in order to proceed with malicious prosecution, there
> had to be finality, an end to the Federal case, correct?
>
> A. Correct.
>
> . . .
>
> Q. How did you know that the finality of the Federal Court action had been
> reached?
>
> A. Because I believe -- I just assumed it was going to be done with the final
> filing. The filing was to basically not pursue the two motions and just file the
> objections.
>
> Q. And allow the case to be dismissed?
>
> A. Right.

(*Id.* at 50:2-5, 51:11-17).

From the excerpts of the transcript above, it is clear that Defendant Glassic

understood that Defendants' Motion for Sanctions (Doc. 72) and Motion for Attorney's Fees

(Doc. 74) likely would not be granted by this Court, and based on this understanding, he

authorized Attorney Collins not to pursue those motions in the Revised Objections.[8] What is

also clear is that Defendant Glassic understood that once this Court ruled on the R&R, this

federal case would be concluded, and Defendants would pursue their malicious prosecution

---

[8] Though Defendant Gorka was not sworn in at the hearing, during her questioning of Attorney Collins, she
also conceded "I think we're all in agreement that you did address the Safe Harbor issue with the Rule 11 attorney
fees and sanctions." (Doc. 152 at 58:15-17).

action in a different forum. As such, the Court finds no mistake, inadvertence, or surprise

that would justify granting Defendants' Motion for Relief from Judgment (Doc. 137).

## Effect of a Voluntary Dismissal

In addition to the above discussion pertaining to the Motion for Sanctions and the

Motion for Attorney's Fees, however, Defendant Glassic also believed that the Revised

Objections would contest Judge Blewitt's so-called findings with respect to the merit of

Plaintiff's Complaint:

> Q. So he's saying, on your behalf, on Ms. Gorka's behalf, he was withdrawing his objections to Judge Blewitt's Report and Recommendation so that that Report and Recommendation was that I grant Plaintiff's Rule 41 motion to dismiss this case voluntarily. I mean, this is what he wrote. Did you understand that's what he was going to do?
>
> A. No, Your Honor.
>
> Q. You did not understand that?
>
> A. No. I was expecting our objections to be on record. It was very important to us, because, I mean, it affects our business, our reputation.
>
> Q. But you did, a moment ago, tell me that you understood that whatever Mr. Collins was going to do was going to end this case.
>
> A. That's correct, Your Honor.
>
> Q. You did understand that?
>
> A. Right. But at the same point, getting our objections on the record. I honestly expected our objections to be on the record.

(*Id.* at 48:13-49:6). Counsel for Attorney Collins clarified:

Q. And the only thing you were looking for, actually, is to get your side of the facts on record somewhere?

A. Correct.

Q. To preserve your reputation?

A. Yes.

(*Id.* at 51:18-22). Thus, Defendants sought vindication in their Revised Objections, because as they interpreted the R&R, Judge Blewitt had determined that Plaintiff's claims against Defendants were valid and substantiated by the evidence of record. Defendants wished to pursue this course of action, despite Attorney Collins's explanation that the R&R contained no findings of fact that would bind subsequent legal proceedings. The Court noted as much to Defendants:

THE COURT: It seems to me what, perhaps, you failed to understand or what you have a contrary view of is what the effect of the voluntary dismissal of the case means, it seems that's where the problem lies. There's an insufficient understanding, on your part, of what that means, because you did understand that the case was going to end, but I think what you didn't understand or frankly didn't want to understand was that no one was going to eradicate or, in any way, eliminate what was in the Report and Recommendation. I think that's what troubles you, am I right?

(*Id.* at 71:25-72:9). Defendant Gorka responded, "Yes, and that's why we felt objections would be filed, that's why we wanted that as a matter of record." (*Id.* at 72:10-11).

Although there was testimony from Attorney Collins as to what the effect of a Motion to Dismiss under FED. R. CIV. P. 12(b)(6) necessitates when addressing the factual

16

allegations of a Complaint, the Court will discuss it here in the hopes of finally putting the matter to rest.

When Defendants previously filed a Motion to Dismiss (Doc. 8), the Court adopted (Doc. 17) Judge Blewitt's R&R in which he recommended denying the motion because "[t]he court must accept as true all . . . allegations of the Complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff." (Doc. 16, at 3). The standard when deciding a Motion to Dismiss under Rule 12(b)(6) requires a reviewing court to accept as true all of the factual allegations in a complaint. Therefore, when the Court denied Defendants' Motion to Dismiss, there was no finding that Plaintiff had *proven* its case or had *established* the facts alleged in the Complaint.[9]

However, Plaintiff *did* move to voluntarily dismiss the Amended Complaint, thus precluding the need for a resolution on the merits. Though Defendants are the prevailing parties, they take issue with Judge Blewitt's R&R because he concluded that:

> Despite Plaintiff's Motion for Voluntary Dismissal of its case, we find that there was a substantial basis for Plaintiff's claims in both of its pleadings that Defendants were liable to it under the Lanham Act and as such, we do not find that Plaintiff acted in bad faith or with malice when it raised its claims under the Act. Thus, we do not find that there was sufficient culpable conduct on the part of Plaintiff. We further find that this case is not an exceptional case in which attorney fees are warranted. As mentioned, Defendants previously sought to dismiss Plaintiff's Lanham claims in their Rule 12(b)(6) Motion to Dismiss and they were unsuccessful in dismissing any of those claims. (Doc. 17).

---

[9] The Court recognizes that Defendants are dissatisfied with the content of the R&R and are unhappy that the filings in this case are a matter of public record. However, Defendants must also recognize that the R&R made no findings in favor of Plaintiff on the claims alleged in the Amended Complaint, which Plaintiff voluntarily withdrew before the Court ever made a ruling on the merits.

(Doc. 101, at 21). The Court makes two observations here: (1) Judge Blewitt's

determination that there was a "substantial basis for Plaintiff's claims in both of its

pleadings" and that Plaintiff did not act "in bad faith or with malice" was with respect to

Defendants' Motion for Attorney's Fees, which Defendants conceded they were not entitled

to and did not oppose withdrawing, and (2) the proper forum for deciding the issues of

malice, bad faith, and "get[ting] the record straight" is in Defendants' malicious prosecution

action, if and when it commences.

In fact, the portion of the R&R discussing Plaintiff's motion to voluntarily dismiss the

case was limited to the following discussion:

> At oral argument, Defendants stated that they had no opposition to Plaintiff's
> Motion for Voluntary Dismissal with Prejudice (Doc. 69). Defendants stated
> that they only want the Court to retain jurisdiction over this case so that it can
> rule on their Motion for Sanctions and Motion for Attorney Fees (Docs. 72 and
> 74) before the Court dismisses this case.
>
> . . .
>
> We find that the Court can grant Plaintiff's Motion for Voluntary Dismissal with
> Prejudice (Doc. 69) and still rule on Defendants' two pending motions for
> sanctions and attorney's fees if they are considered collateral motions.
>
> As the Court stated in *Stauffer v. D.R. Horton, Inc. ---New Jersey Horton, Inc.-*
> *-New Jersey*, 2008 WL 5215951, *2 (E.D. Pa. December 10, 2008), the Court
> stated: *Although a timely notice of voluntary dismissal under Rule 41(a) (1)(A)*
> *usually ends a case and deprives the court of jurisdiction to issue a merits*
> *ruling, the court may continue to decide "collateral" issues, including*
> *sanctions, costs, and attorneys' fees. Id.* at 166, n. 8 (citing *Cooter & Gell v.*
> *Hartmarx Corp.*, 496 U.S. 384, 396-98, 110 S.Ct. 2447, 110 L.Ed.2d 359
> (1990)).

18

(Doc. 101, at 9) (emphasis added). Thus, in addressing Defendants' Motion for Attorney's Fees and Motion for Sanctions, Judge Blewitt was not addressing the merits of Plaintiff's case, but deciding only collateral issues.

In other words, Judge Blewitt, and by extension, the undersigned Judge, never issued a merits ruling in this case. Plaintiff never established any claims or any facts in support of its claims. Should Defendants pursue a malicious prosecution action against Plaintiff, they will do so on a clean slate with no findings of fact from this Court to bind courts in subsequent actions.

In conclusion, the Court finds no mistake, inadvertence, surprise, or excusable neglect with respect to the Revised Objections (Doc. 130) that Attorney Collins submitted on Defendants' behalf.

> Situations in which relief has been granted pursuant to Rule 60(b)(1) include: Where the defendant's attorney did not know that the defense of forgery was available when he agreed to a consent judgment against his client in an action on a written guaranty note; where a defendant corporation had no actual notice that a suit had been entered against it; and where an attorney confused two similar cases involving his client.

*Boughner v. Sec'y of Health, Ed. & Welfare*, 572 F.2d 976, 977-78 (3d Cir. 1978). None of these situations apply to this case. There simply was no mistake, inadvertence, surprise, or excusable neglect in this case which warrants relief from judgment.

## 60(b)(3)

"To prevail, the movant must establish that the adverse party engaged in fraud or other misconduct, and that this conduct prevented the moving party from fully and fairly

19

presenting his case." *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983). "In order to sustain the burden of proving fraud and misrepresentation under Rule 60(b)(3), the evidence must be clear and convincing." *Brown v. Pennsylvania R. Co.*, 282 F.2d 522, 527 (3d Cir. 1960).

"[A]n attorney's deliberate attempt to mislead the court may be such a fraud as will permit the reopening of a judgment." *Bandai America Inc. v. Bally Midway Mfg. Co.*, 775 F.2d 70, 73 (3d Cir. 1985).[10] "Failure to disclose or produce evidence requested in discovery can constitute Rule 60(b)(3) misconduct." *Stridiron*, 698 F.2d at 207.

Defendants argue that Plaintiff has made fraudulent allegations throughout the course of these proceedings, but even if Plaintiff did act in bad faith, such "fraud" is not the basis for re-opening the case. Rule 60(b)(3) relief is granted when an opposing party's fraud prevented the moving party from fairly presenting its case.

For instance, in the seminal case of *Stridiron*, the plaintiff-husband's dishonest discovery answers that he had never been married before his marriage to defendant-wife were subsequently proven untrue by a certificate of a prior marriage that the wife procured after the trial court awarded a divorce decree the husband sought. The Third Circuit held that such dishonesty constituted the type of fraud that would justify vacating a divorce decree and granting a new trial. *See also Bethel v. McAllister Bros., Inc.*, 81 F.3d 376 (3d Cir. 1996) (affirming district court's grant of a new trial under Rule 60(b)(3) because the

---

[10] To the extent Defendants contend that Attorney Collins engaged in fraud by misleading this Court into adopting the R&R, the Court rejects such assertions for the reasons set forth in the Court's discussion of Rule 60(b)(1) in this Opinion.

plaintiff had given patently contradictory testimony at trial and at a subsequent arbitration in a separate case). Thus, in *Stridiron*, the plaintiff's fraud, which was proven by clear and convincing evidence, prevented the defendant from fully and fairly presenting her case. Here, Plaintiff does not wish to pursue its claims against Defendants, so there is no need for either side to fully and fairly present its case.

Furthermore, as the Court stated above, determining whether Plaintiff did make fraudulent and unfounded accusations against Defendants for the sole purpose of harming them financially, emotionally, and reputationally is a matter that will be the subject of any future malicious prosecution case that Defendants may bring against Plaintiff.

Therefore, the Court will deny Defendants' Motion for Relief from Judgment (Doc. 137) on the basis of fraud or other misconduct.

## 60(b)(6)

"'[E]xtraordinary circumstances' must be present to justify the use of the Rule 60(b)(6) catch-all provision to vacate the judgment." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 (3d Cir. 2008). "This requirement exists in order to balance the broad language of Rule 60(b)(6), which allows courts to set aside judgments for 'any' reason justifying relief, with the interest in the finality of judgments." *Id*. at 255. "Rule 60(b)(6) exists so that courts may 'vacate judgments whenever such action is appropriate to accomplish justice,' in situations that are not addressed by the other five clauses of Rule 60(b)." *Id*. at 254 (internal citations and quotation marks omitted).

> We have explained that a showing of extraordinary circumstances involves a showing that without relief from the judgment, an extreme and unexpected hardship will result. This hardship requirement may sometimes be satisfied when the judgment precluded an adjudication on the merits. But extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices.

*Id.* at 255 (internal citations and quotation marks omitted); *see also Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 275 (3d Cir. 2002) ("Coltec, . . . deliberately chose to negotiate away its constitutional claims while actively represented by competent counsel."); *In re Fine Paper Antitrust Litig.*, 840 F.2d 188, 195 (3d Cir. 1988) ("They do not contend that their choice to forego appellate remedies was other than counseled and knowledgeable".).

As discussed above, Defendant Glassic admitted that he and Attorney Collins agreed that Defendants would not pursue their Motion for Sanctions (Doc. 72) and Motion for Attorney's Fees (Doc. 74) in the Revised Objections. Defendant Glassic also admitted he knew that after Attorney Collins filed Defendants' Revised Objections, the case would be over. Therefore, there is no basis to award Rule 60(b)(6) relief because "extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices." *Budget Blinds*, 536 F.3d at 255.[11]

Defendants cite to *Boughner v. Secretary of Health, Education & Welfare* for the proposition that they should not be bound by Attorney Collins's actions. 572 F.2d 976, 978 (3d Cir. 1978) ("in the factual setting here, which warrants relief under Rule 60(b)(6), appellants are not bound by the acts of their attorney for the purposes of the rule.").

---

[11] The same reasoning and conclusion would apply in the Court's analysis of Defendants' 60(b)(1) claim of mistake, inadvertence, surprise, or excusable neglect.

However, the factual circumstances of *Boughner* were unique and are not analogous to this

case:

> All six appellants were represented by Peter Krehel, Esquire, who instituted the actions in the district court. In each case the Secretary filed a motion for Summary Judgment. These motions were unopposed and granted pursuant to Local Rule 301.01(e), of the United States District Court for the Middle District of Pennsylvania. Present counsel for appellants was then substituted and in each case moved to vacate the summary judgments pursuant to F.R.Civ.P. 60. The appellants relied specifically on sections 60(b)(1) and 60(b)(6), citing as the basis for the motion: (1) Krehel's intense involvement in his campaign for the office of Common Pleas Judge of Northumberland County, Pennsylvania; (2) the loss of his secretary who allegedly was responsible for his calendar; and (3) Krehel's large backload of cases. Their reasons were insufficient in the judgment of the district court. However, a survey was conducted to determine how many other summary judgment motions Krehel had permitted to go unopposed. The results of the survey were astounding. Krehel had failed to file a responsive pleading in a total of 52 H.E.W. cases. This egregious conduct amounted to nothing short of leaving his clients unrepresented.

*Id.* at 977.

*Boughner* represented the "extraordinary circumstances" that would justify the award

of relief from judgment under Rule 60(b)(6). Here, though Defendants were dissatisfied with

the content of the Revised Objections (Doc. 130), the evidence elicited at the September

11, 2013 hearing shows that they understood they would not pursue Motion for Sanctions

(Doc. 72) and Motion for Attorney's Fees (Doc. 74) any further, and that this particular case

would end once Attorney Collins filed Defendants' Revised Objections and the Court ruled

on the pending R&R.

## IV. Conclusion

For the foregoing reasons, the Court will deny Defendants' Motion for Relief from

Judgment. (Doc. 137). The Court also will deny Defendants' Motion for Hearing (Doc. 151)

as moot. A separate Order follows.

Robert D. Mariani
United States District Court Judge